IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| MERCANTILE-SAFE DEPOSIT AND TRUST COMPANY | : : : : | |
| v. | : : | Civil No. CCB-05-2217 |
| CHICAGO TITLE INSURANCE COMPANY | : : : | |

## **MEMORANDUM**

Now pending before the court is a Motion to Alter/Amend the Court's Judgment pursuant to Fed. R. Civ. P. 59(e) and to Amend the Court's Factual Findings pursuant to Fed. R. Civ. P. 52(b) brought by defendant Chicago Title Insurance Company ("Chicago Title"). The parties have fully briefed the motion and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, defendant's motion will be denied.

## **BACKGROUND**

In *Mercantile-Safe Deposit & Trust Co. v. Chicago Title Ins. Co.*, 2007 WL 892103 (D. Md. 2007), this court held Chicago Title had breached its indemnity obligations under two title insurance policies (the "Policies") issued to plaintiff Mercantile-Safe Deposit and Trust Company ("Mercantile"). The Policies at issue insured Mercantile's title on real property located at 1 Edward Kila Court (the "Property") under two indemnity deeds of trust ("IDOTs") executed by Edward Kila pursuant to unrecorded trust documents.

Both parties submitted cross-motions for summary judgment. This court granted summary judgment for Mercantile and denied summary judgment to Chicago Title, awarding Mercantile damages of $3,250,000 plus interest. Chicago Title now asks this court to reconsider

1

its prior opinion based on the same arguments it presented in the previous round of summary judgment motions.

## ANALYSIS

Fed. R. Civ. P. 52(b) provides, "[o]n a party's motion filed no later than 10 days after entry of judgment, the court may amend its findings -- or make additional findings -- and may amend the judgment accordingly." Such a motion, however, should not be "employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986). This court has reviewed Chicago Title's motion and finds no reason to amend its prior findings of fact. *See id.*; *Nat'l Metal Finishing Co., Inc. v. BarclaysAmerican/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990) ("Rule 52(b) is not intended to allow parties to rehash old arguments already considered and rejected by the trial court. . . .").

Similarly, the court finds no persuasive reason to alter or amend its ruling under Fed. R. Civ. P. 59(e). *See Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *EEOC v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 112 (4th Cir. 1997). There are three situations in which a district court may amend an earlier judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *United States ex rel Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (quoting *Pacific Ins. Co.*, 148 F.3d at 403). Courts are reluctant to grant such a motion, because "reconsideration of a judgment after its entry is an extraordinary remedy which should be used

2

sparingly." *Pacific Ins. Co.*, 148 F.3d at 403 (quoting 11 Charles Alan Wright, et al., Federal Practice and Procedure § 2801.1 (2d ed.1995)).

As there has been no change in controlling law nor new evidence[1] offered in this case, there must be a clear error of law or manifest injustice for the court to grant Chicago Title's Rule 59(e) motion. Given that the vast majority of Chicago Title's arguments are not new, this court feels the need to address only two of the issues raised by movant. First, Chicago Title asserts that under Policy Condition and Stipulation 7(a)(ii) ("Policy Condition 7(a)(ii)"),[2] Chicago Title's liability is limited to "the amount of the unpaid principal indebtedness secured by the [Commart and McShane IDOTs]." The term "principal indebtedness," Chicago Title asserts, refers to the unconditional guaranties signed by Edward Kila as Trustee, which were held invalid by the Maryland Court of Special Appeals. Thus, the measure of Mercantile's damages for the defective IDOTs should be zero.

---

[1] In a footnote, Chicago Title refers to an expert opinion from real property attorney and title insurance agent, Mark Dopkin, that certain information allegedly not disclosed by Mercantile to Chicago Title was material to the title risk at issue. (Rep. Mot. to Amend 3.) This expert disclosure was mistakenly filed with the court, however, and is not evidence that was referred to in the parties' summary judgment motions or should have been relied on by this court.

[2] Policy Condition 7 provides in relevant part:

> This policy is a contract of actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.
>    (a) The liability of the Company under this policy shall not exceed the least of: . . .
>        (ii) the amount of the unpaid principal indebtedness secured by the insured mortgage . . . at the time the loss or damage insured against by this policy occurs, together with interest thereon; . . .

(Def.'s Summ. J. Mot., Am. Ex. 42.)

Chicago Title's argument, however, is not persuasive.  In interpreting Policy Condition 7(a)(ii), this court looks to the plain meaning of the phrase "principal indebtedness."  According to the leading legal dictionary, the term "principal" means "[c]hief; primary; most important."  Black's Law Dictionary (8th ed. 2004).  Principal obligation is synonymous with primary obligation and is defined as "[a]n obligation that arises from the essential purpose of the transaction between the parties."  *Id.*  Thus, the phrase "principal indebtedness" refers to the primary debt with which a transaction is concerned.

In the transaction at hand, Edward Kila as Trustee guaranteed the repayment of Mercantile's loans to Commart and McShane, securing these guaranty obligations with two IDOTs.  Such a guaranty, however, does not become due and is thus not considered a debt unless and until the borrower defaults on the underlying promissory notes.[3]  *See* 74 Md. Op. Att'y Gen. 281 (1989).  If this occurs, a lender will foreclose on the IDOTs, applying the value of the collateral to the defaulted loans.  Consequently, a transaction involving an IDOT is structured entirely around providing collateral for a third party's debt for which the land-owning entity is only secondarily liable.  The debt for which the third party is primarily liable constitutes the primary obligation or "principal indebtedness" secured, albeit somewhat indirectly, by the IDOT.  Thus, in the present case, the "principal indebtedness secured by the [IDOTs]" referred to in Policy Condition 7(a)(ii) are the underlying loans of Commart and McShane.

This conclusion is further confirmed by Policy Condition 7's introductory language, which limits a lender to its "actual monetary loss" sustained as a result of a title defect.

---

[3] This is the rationale behind the Maryland practice of deferring recordation taxes until default occurs. *See* 74 Md. Op. Att'y Gen. 281; 31 MICPEL, Gordon on Foreclosures § 31.7 (4th ed. 2004).

Therefore, in the context of Policy Condition 7 as a whole, it is clear that subsection 7(a)(ii) provides a measure of the insurer's extent of liability in as much as it captures actual damages sustained by an insured.  *See* 1 Title Ins. Law § 10:10 (2006).  For example, 7(a)(ii) contemplates a situation in which a property's value has diminished due to a title defect, but nonetheless is greater than the unpaid loan balance secured by the property.  In these circumstances, a mortgagee will be prevented from receiving a windfall by foreclosing on the property while also attempting to recover under the title insurance policy.  *See. e.g.*, *Green v. Evesham Corp.*, 430 A.2d 944, 946 (N.J. Super. Ct. App. Div. 1981).  Here, however, Mercantile will suffer an actual loss greater than the amount this court awarded in damages.

As a secondary matter, Chicago Title disputes the precise timing of the settlement negotiations referred to in this court's previous opinion.  Mercantile presented sufficient evidence, however, that settlement opportunities occurred throughout the *Finn* litigation, in any negotiation of which Chicago Title insisted on being involved.  (*See* Pl.'s Summ. J. Rep., Ex. F & D, McDonough Dep. at 106-107.)  Moreover, it is Chicago Title's act of defending the *Finn* litigation without reservation while operating under the same facts that the company now argues support its claim of non-coverage that confirms the presence of prejudice.  Chicago Title cannot now attempt to deny coverage merely because it has hired another lawyer to do what it could not with its *Finn* trial counsel.  Equitable estoppel is thus appropriate; Mercantile operated under the presumption that Chicago Title would be responsible for coverage and suffered prejudice as a consequence of its reliance given that Mercantile cannot now insist on impartial counsel or seek an alternative resolution or source of recovery.  Consequently, Chicago Title's motion for reconsideration will be denied.

A separate order follows.

| | |
|---|---|
|   June 6, 2007   <br> Date |        /s/       <br> Catherine C. Blake <br> United States District Judge |